# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN R. MOORE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:09-cv-01275-TWP-MJD |
| SHAWMUT WOODWORKING & SUPPLY, INC., | ) ) ) ) |
| Defendant. | ) ) |

## ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Shawmut Woodworking & Supply, Inc.'s ("Shawmut" or "Defendant") Motion for Summary Judgment [Dkt. 29] and on Plaintiff John R. Moore's ("Moore" or "Plaintiff") Motion for Partial Summary Judgment [Dkt. 34]. For the reasons stated herein, the Court denies Defendant's Motion for Summary Judgment and grants Plaintiff's Motion for Partial Summary Judgment.

## I. BACKGROUND

This case involves an accident that occurred at the construction site for a Dave & Buster's arcade and restaurant. Dave & Buster's contracted with Shawmut to construct the site and Shawmut sub-contracted with P.I.P.E., Inc. ("PIPE") for the necessary plumbing work.

On February 18, 2009, Moore, an employee of PIPE, injured his arm and was thrown several feet when his sleeve was caught in a pipe vise owned by PIPE. According to a report by PIPE's Director of Operations, Jonathon Pfendler, Moore was working on the wrong end of the vise preventing him from being able to stop the machine if he got entangled. The report also stated that PIPE's field personnel had jumped the foot pedal allowing the vise to operate without

1

using the pedal and without stopping, which was not in accordance with PIPE's safety guidelines. Additionally, PIPE's competent person on site should not have allowed Moore to operate the machine without the foot pedal.

Shawmut did not have any construction workers at the site, only management and supervisory personnel were present. Shawmut's staff held weekly safety meetings for the sub-contractors on the project, performed safety inspections, and completed a "Weekly Safety Report." After Moore's accident, Shawmut issued a "Safety Ticket" to PIPE for using the machine unsafely.

On September 10, 2009, Moore filed suit in the Marion Superior Court of Marion County, Indiana alleging negligence against Shawmut. Shawmut removed the matter and this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II. **LEGAL STANDARD**

Summary judgment is appropriate when "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Brown v. Temain*, 2010 WL 5391578, at *1 (N.D. Ind. 2010) (quoting Fed.R.Civ.P. 56(a)). In arguing whether a fact can or cannot be genuinely disputed, a party must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials…." *Id.* at *2 (quoting 56(c)(1)).

The Court must draw all reasonable inferences from undisputed facts in favor of the non-moving party and view the disputed evidence in the light most favorable to the non-moving party. *First Bank & Trust v. Firstar Info. Services, Corp.*, 276 F.3d 317, 322 (7th Cir. 2001). The non-moving party, however, may not rest upon mere allegations in the pleadings or upon

2

conclusory testimony or affidavits; rather, he must go beyond the pleadings to support his contentions with properly admissible evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). For negligence cases, summary judgment is "'rarely appropriate… because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person--one best applied by a jury after hearing all of the evidence.'" *Smith v. King*, 902 N.E.2d 878, 881 (Ind. Ct. App. 2009) (quoting *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004)).

### III. <u>DISCUSSION</u>

In his Complaint, Moore alleges that negligence on the part of Shawmut proximately caused his injuries. In Indiana, to establish negligence, a plaintiff must establish that the defendant had a duty in relation to the plaintiff, which the defendant beached, and that such breach proximately caused plaintiff's injuries. *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1264 (Ind. Ct. App. 2002).

Shawmut argues it is entitled to judgment as a matter of law because: (1) it owed no duty to Moore as it either assumed no duty of care or it delegated any duty owed, (2) it did not breach any duty, and (3) it was not the proximate cause of Moore's injuries. Moore argues he is entitled to judgment as a matter of law because Shawmut assumed a non-delegable duty by contract making Shawmut vicariously liable for any of PIPE's negligence. Shawmut argues that any liability it has is independent in nature and not vicarious. The Court will begin its analysis by determining whether Shawmut owed a duty of care to Moore because absent such a duty, Shawmut cannot be liable for Moore's injuries. *See Stumpf v. Hagerman Constr. Corp.,* 863 N.E.2d 871, 876 (Ind. Ct. App. 2007).

A.  Whether Shawmut Owes a Duty of Care to Moore

Whether a duty exists is a question of law resolved by the court. *Illinois Bulk Carrier v. Jackson*, 908 N.E.2d 248, 253 (Ind. Ct. App. 2009). As a general rule, a general contractor is not liable for the negligence of an independent contractor and owes no duty to the independent contractor's employees. *Stumpf,* 863 N.E.2d at 876. The rationale for this rule is that the general contractor often has little control over the sub-contractor. *Id.*

As with most rules in law, there are exceptions to the common law rule of no liability. *Id.* (citing *Armstrong v. Cerestar*, 775 N.E.2d 360, 369 (Ind. Ct. App. 2002); *Ramon v. Glenroy Constr. Co., Inc.*, 609 N.E.2d 1123, 1128 (Ind. Ct. App. 1993)). The exception at issue here applies when a party is charged with a specific duty by law or contract.[1] In determining whether a party assumed a duty by contract, courts should look at the parties' intent at the time of execution of the contract. *Id.* (citing *Merrill*, 771 N.E.2d at 1268). To impose liability, a contract provision must be specific as to the duty assumed by the general contractor. *Harris v. Kettlehut Constr., Inc.*, 468 N.E.2d 1069, 1076-77 (Ind. Ct. App. 1984)). Actionable negligence can be predicated upon a contractual duty only when the contract affirmatively evinces an intent to charge one party with a duty of care. *Stumpf,* 863 N.E.2d at 877 (citing *Perryman v. Huber, Hunt & Nichols, Inc.*, 628 N.E.2d 1240, 1244 (Ind. Ct. App. 1994).

Once a general contractor assumes a duty of care, the duty becomes non-delegable and the party may be both independently liable and liable for the sub-contractor's negligence. *See Hunt Const. Group, Inc. v. Garrett*, 938 N.E.2d 794, 799 (Ind. Ct. App. 2010). As such, the non-delegable duty doctrine becomes a form of vicarious liability, which "applies where a party is

---

[1] The other exceptions apply when: (1) the work contracted is intrinsically dangerous; (2) the work will create a nuisance; (3) harm will probably result unless due precautions are taken; and (4) the act to be performed is illegal. *Stumpf,* 863 N.E.2d at 876.

4

legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship to the wrongdoer." *Id.* at 798 (citing *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 147 (Ind. 1999)). In construction cases, courts have applied vicarious liability when a general contractor/sub-contractor relationship exists. *Id.* at 799.

Moore points to several paragraphs in the Dave & Buster's-Shawmut contract that he claims demonstrate Shawmut assumed a duty of care regarding safety. Of particular relevance are the following paragraphs:

> **3.3.1**
> The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over the means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract unless the Contract Documents give other specific instructions concerning these matters. If the contract documents give specific instructions concerning constructions means, methods, techniques, sequences or procedures, the contractor shall evaluate the jobsite safety thereof and, except as stated below, shall be fully and solely responsible for the jobsite safety of such means, methods, techniques, sequences or procedures….
>
> **10.1.1 PROTECTION OF PERSONS AND PROPERTY**
>
> The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the contract.
>
> **10.2 SAFETY OF PERSONS AND PROPERTY**
>
> The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:
>
> 1. employees on the Work and other persons who may be affected thereby;
>
> **10.2.2**
>
> The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.
>
> **10.2.6**
>
> The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents. This

> person shall be the Contractor's superintendent unless otherwise designated by the Contractor in writing to the Owner, and Architect.

The Court finds the language in the above paragraphs sufficient to create a contractual duty of care on the part of Shawmut for the safety of all employees at the worksite, including the sub-contractors' employees.

In *Stumpf*, similar language to the above quoted paragraphs created a contractual duty of care. *Stumpf*, 863 N.E.2d at 878. *Stumpf* involved a contract between Hagerman, the general contractor, and Purdue University to renovate one of the University's halls. *Id.* at 874-75. Hagerman then contracted with sub-contractor Dodd who, in turn, sub-contracted with the plaintiff's employer. While working at the site, plaintiff fell from a ten-foot ladder and hit his head on the concrete resulting in permanent brain damage. *Id.*

In analyzing whether Hagerman assumed a duty by contract, the court looked at the following language in the Hagerman-Purdue contract:

> The Contractor shall take all necessary precautions for the safety of employees on the work, and shall comply with all applicable provisions of Federal, State, and Municipal safety laws and building codes to prevent accidents or injury to persons on, about or adjacent to the premises where the work is being performed.... Contractor shall designate a responsible member of its organization on the work, whose duty shall be the prevention of accidents.

*Id*. at 877-78. The court found this provision, along with a provision requiring Hagerman to administer and comply with all applicable rules and standards, "evince[d] intent by the parties to charge Hagerman with a duty of care for the safety of all the employees on the project, including the employees of its subcontractors." *Id.* at 878.

In reaching this conclusion, the court relied on previous cases where it found a duty of care based on the specific language in the contract. *Id.* at 877-88. In *Harris v. Kettlehut Constr., Inc.*, the contract stated that "[t]he Contractor shall take all necessary precaution for the safety of all employees on the Project" and that the contractor had to comply with all Federal, state, and

municipal laws and regulations regarding safety. *Id.* (discussing *Harris*, 468 N.E.2d at 1072-73). Likewise in *Perryman*, the contract required the construction manager to comply with all applicable laws pertaining to employment and the construction manager employed a safety officer that oversaw its sub-contractors. The contract also made the construction manager responsible for reviewing and making recommendations to the sub-contractor's safety programs. *Id.* at 877 (discussing *Perryman v. Huber, Hunt & Nichols, Inc.*, 628 N.E.2d 1240, 1244 (Ind. Ct. App. 1994)).

Comparing the contracts in *Stumpf*, *Harris*, and *Perryman* with the Dave & Buster's-Shawmut contract reveals a number of similarities. First, the Dave & Buster's-Shawmut contract requires Shawmut to take reasonable precautions for employees on the work. Second, the contract requires Shawmut to designate a person responsible for the prevention of accidents. Third, the contract requires Shawmut to comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities. In addition to these similarities, the Dave & Buster's-Shawmut contract makes Shawmut "responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the contract."

Shawmut argues the contract language did not create a duty of care. In support of this argument, Shawmut cites to cases in which the contractor assumed no duty of care where the contractor had only minimal control over safety. *See Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1269-70 (Ind. Ct. App. 2002); *Armstrong v. Cerestar USA, Inc.*, 775 N.E.2d. 360, 371 (Ind. Ct. App. 2002).

As discussed earlier, the Dave & Buster's-Shawmut contract gave Shawmut more than minimal control over safety; the contract makes Shawmut responsible for safety at the site. In connection with this responsibility, Shawmut held weekly safety meetings for sub-contractors, provided written safety materials, and performed safety inspections and reports. Shawmut also had

7

the ability to issue citations to sub-contractors as demonstrated by its "Safety Ticket" to PIPE after Moore's accident. In short, the contract gave Shawmut a great deal of control over safety at the worksite, unlike situations where the contract merely required compliance with safety rules. *See Merrill*, 771 N.E.2d at 1269.

Shawmut also cites to *Tietge v. Remy Construction Company, Inc*., 526 N.E.2d 1008 (Ind. Ct. App. 1988). In *Tietge*, the contract contained provisions requiring the contractor to comply with applicable laws, erect and maintain all safeguards to protect workers, and to designate a person responsible for preventing accidents. *Id.* at 1011.

While the contract in *Tietge* contained language similar to the Dave & Buster's-Shawmut contract, the similarities end there. *Tietge* did not involve a general contractor/sub-contractor situation; rather, the owner contracted with several prime contractors, including the defendant, to complete various jobs on the site. *Id*. at 1010. Each prime contractor was responsible for only its portion of the job. Another prime contractor employed the plaintiff in *Tietge* and the defendant had no relationship with that plaintiff. *Id.*

Additionally, the contract provisions cited by the plaintiff in *Tietge* were general in nature and applied to all the prime contractors. *Id*. In those provisions, the term Contractor referred to all the contractors on the site and nothing in those provisions evidenced an intent to charge the defendant alone with a duty of safety. *Id*. at 1011. The court found it implausible that the parties intended to charge each prime contractor with a duty of safety for all of the workers on the site, because such a reading of the contract would lead to chaos requiring each prime contractor to inspect the work of the other prime contractor's employees, potentially leading to less safe conditions. *Id.* at 1011-12.

Shawmut argues that the chaos described in *Tietge* would result if this Court finds it owed a duty to Moore. The Court disagrees. Here, the Dave & Buster's-Shawmut contract refers to Shawmut alone and charges only Shawmut with a duty of care as the General Contractor. This would not lead to chaos because various contractors would not be double checking the work of other contractor's employees, only Shawmut was charged with such a duty. In fact, Shawmut did oversee safety by inspecting the site, holding safety meeting, and issuing citations, yet there is no evidence this resulted in chaos at the Dave & Buster's worksite.

Shawmut also argues that the written agreements indicate a division of responsibilities similar to that found in *Tietge*, with the PIPE-Shawmut contract placing the responsibility for safety on PIPE. The PIPE-Shawmut contract requires PIPE to assume the same obligations and responsibilities that Shawmut assumed pursuant to the Dave & Buster's-Shawmut contract, to comply with safety precautions, to implement and enforce its own safety program including designating a safety person, and to ensure all construction tools and equipment are safe and in good working order. While the PIPE-Shawmut contract requires PIPE to take certain measures regarding the safety of its employees, the language does not necessarily charge PIPE with the sole responsibility for the safety of its employees nor does it alter specific duties found in the Dave & Buster's-Shawmut contract.

In *Tietge*, at the time the parties executed their respective contracts, each party knew its specific duties and no later-in-time contract attempted to alter those specific duties. *Id.* The Dave & Buster's-Shawmut contract placed the responsibility for safety on Shawmut. The PIPE-Shawmut contract does not alter this. At the time the parties executed the Dave & Buster's-Shawmut contract, the intent was to charge Shawmut with the duty of safety. Later, Shawmut may have

intended the PIPE-Shawmut contract to relieve it of its earlier assumed duty, but this essentially becomes an issue of delegation, which the Court discusses below.

B. <u>Whether Shawmut Delegated Its Duty</u>

Shawmut's next argument – that it had no duty to Moore – hinges on its ability to delegate its duty to PIPE. Generally, once assumed, a duty of care becomes non-delegable. *See Stumpf*, 863 N.E.2d at 876-77. The often quoted policy reason for making a duty non-delegable is that "the responsibilities are deemed 'so important to the community' that the principal should not be permitted to transfer these duties to another." *Id.* at 877 (quoting *Ryobi Die Casting v. Montgomery*, 705 N.E.2d 227, 229 (Ind. Ct. App 1999)).

Shawmut contends that, unlike the other exceptions, there exists no public policy for making the contract exception non-delegable. Shawmut argues that, under the contract exception, the party voluntarily assumes a duty it otherwise did not have and, therefore, should be able to delegate it to another party who has more knowledge and expertise. In discussing the non-delegable exceptions, the court in *Bagley v. Insight Communications Co.,* 658 N.E.2d 584, 588 (Ind. 1995), explained that "[t]he exceptions encourage the employer of the contractor to participate in the control of work covered by the exceptions in order to minimize the risk of resulting injuries." . The public policy of minimizing injuries seems highly applicable in this case and it makes no difference whether the party voluntarily assumed its duty by contract or by any other means.

Putting policy aside, the Court finds the current law renders the duty non-delegable. *Stumpf*, 863 N.E.2d at 876-77. The PIPE-Shawmut contract, therefore, does not delegate sole legal responsibility to PIPE.[2] At most, it creates joint or concurrent responsibility for safety, placing a duty on both PIPE and Shawmut. *See Harris*, 468 N.E.2d at 1076-77.

---

[2] Shawmut's remedy, if any, against PIPE is the indemnification clause contained in the PIPE-Shawmut contract.

The Court notes that, while Shawmut could delegate the performance of its duty to another party with more knowledge, it cannot delegate the legal liability accompanying that duty. By way of example, Shawmut had a contract with Dave & Buster's to construct a restaurant and arcade; Shawmut delegated its performance of that contract to various sub-contractors with more knowledge of specific areas of construction; nevertheless, Shawmut remained legally responsible to Dave & Buster's for the ultimate performance of the construction contract. Likewise, Shawmut could delegate performance of its duty of care regarding safety to a sub-contractor while remaining legally responsible for that duty.

C. <u>Whether Shawmut is Vicariously Liable for PIPE's Negligence</u>

Moore argues that in assuming a duty by contract, Shawmut is now vicariously liable for PIPE's negligence. A duty assumed by contract supports both independent liability and vicarious liability. *See Hunt*, 938 N.E.2d at 799. In *Hunt*, the court concluded that the defendant assumed a duty by contract, but vicarious liability did not arise because the relationship between defendant and plaintiff's employer was not that of general contractor/sub-contractor. *Id.* at 805. Thus, the relationship between the parties determines whether vicarious liability will arise. Here, the undisputed facts show that Shawmut and PIPE's relationship was that of a general contractor/sub-contractor and as such Shawmut can be vicariously liable for PIPE's negligence.

In sum, when viewing the Dave & Buster's-Shawmut contract as a whole, the Court finds the language of the contract affirmatively evinces an intent to charge Shawmut with a non-delegable duty of care for the safety of all employees at the worksite, including the employees of PIPE. Further, as a general contractor, Shawmut can be held vicariously liable for sub-contractor PIPE's negligence in regards to safety.

D. Whether Shawmut Breached its Duty and Proximately Caused Moore's Injuries

Having concluded that Shawmut owed a non-delegable duty of care, the Court next addresses Shawmut's argument that it did not breach a duty owed to Moore and did not proximately cause Moore's injuries. "[A] breach of duty, which requires a reasonable relationship between the duty imposed and the act alleged to have constituted the breach, is usually a matter left to the trier of fact." *Kroger Co. v. Plonski*, 930 N.E.2d 1, 9 (Ind. 2010). Proximate cause has been defined as "that cause which, in natural and continuous sequence, unbroken by efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Id.* (quoting *Peters v. Forster*, 804 N.E.2d 736, 743 (Ind. 2004)).

The main gist of Shawmut's argument is that PIPE and Moore's acts or omissions were the reasons behind the accident and Shawmut had no part in the accident and that Shawmut relied on PIPE and Moore's expertise. This argument assumes only independent liability and not vicarious liability. Nevertheless, the Court finds a genuine dispute of fact regarding whether Shawmut breached its duty and whether that breach proximately caused Moore's injuries. Shawmut took a number of actions to ensure safety at the site; whether Shawmut should have done more or should have done something differently are disputed issues for the trier of fact. Likewise, whether Shawmut's acts or omissions proximately caused Moore's injuries is a disputed question of fact.

## IV. CONCLUSION

In conclusion, Shawmut's Motion for Summary Judgment [Dkt. 29] is **DENIED** because Shawmut assumed a duty of care by contract and there exists a genuine dispute of fact regarding the issues of breach and proximate cause. The Court **GRANTS** Moore's Motion for Partial Summary Judgment [Dkt. 34] and finds as a matter of law that Shawmut assumed a contractual non-delegable

duty for the safety of all employees, including employees of the sub-contractors. Further, Shawmut can be held vicariously liable for the negligence of its sub-contractors.

    SO ORDERED.

    Date: 03/09/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles A. Carlock
charliecarlock@juno.com

John P. Daly, Jr.,
GOLITKO & DALY, P.C.
john@gotlikodaly.com

Donald G. Orzeske
GOODIN ORZESKE & BLACKWELL, P.C.
dorzeske@goblaw.com

Jennifer L. Blackwell
GOODIN ORZESKE & BLACKWELL, P.C.
jblackwell@goblaw.com